COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-258-CR

 

 

NATHAN EDWARD SHELBY                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Nathan Edward
Shelby appeals the trial court=s denial of his motion to suppress. 
After the trial court denied his motion to suppress, Appellant entered
an open plea of guilty to count one of the indictment charging him with
possession of methamphetamine of less than one gram.  The trial court sentenced Appellant to six
months= confinement.  In a single
issue, Appellant complains that the trial court erred in denying his motion to
suppress. We affirm.

FACTUAL BACKGROUND

While he was on patrol of The
Parks Mall in Arlington during the Christmas season, Officer Jenkins= attention was drawn to a car parked in the mall parking lot.  The car was parked on the far east side of
the parking garage, away from the mall, and was occupying three parking
spots.  Officer Jenkins saw one man
standing outside the vehicle,[2]
whom he identified as Appellant, and another man occupying the front passenger
side of the  car.  He testified that he thought the behavior was
suspicious because people do not usually park that far from the mall, given the
parking spots available closer to the mall, and because the car was parked
across three parking spaces. 








Because he knew that there
were a lot of car burglaries in that parking garage, as well as robberies,
Officer Jenkins stopped and observed the car for approximately five
minutes.  During that time, Appellant
continued to do something either under or on the seat.  Appellant then got into the car and drove to
another parking lot at the mall.  Officer
Jenkins followed the car out of the mall parking lot and across the street into
another parking lot on the north side of a car stereo business.  As he pulled his car into the parking lot,
Officer Jenkins turned on his lights to indicate his location to other officers
because he had called in for backup.  He
then approached the occupants.

When Officer Jenkins
approached him, Appellant immediately began to tell Officer Jenkins that he had
just bought a jacket and he insisted on showing Officer Jenkins the
receipt.  Officer Jenkins testified that
Appellant was talking fast and was nervous. 
In light of Appellant=s actions, Officer Jenkins asked Appellant to step out of the car in
order to question Appellant about his intentions at the mall that day away from
the passenger. 








Appellant exited the car, and
Officer Jenkins conducted a pat-down for officer safety and came across
something that he suspected was contraband. He asked Appellant for consent to
search his pockets and presented him with a Aconsent to search form,@ which Appellant read over for a very short amount of time and quickly
signed.  When he searched Appellant=s pockets, Officer Jenkins found a small bag of what he recognized to
be methamphetamine. Officer Jenkins then arrested Appellant for possession of a
controlled substance and placed him in the back of the patrol car.  Officer Alvarez assisted Officer Jenkins by
running a routine warrant check on the passenger while Officer Jenkins
conducted his investigation of Appellant. 

Following Appellant=s arrest, Officer Jenkins conducted an inventory search of the vehicle
prior to having it towed.  Upon searching
Appellant=s car,
Officer Jenkins found over $15,000 in cash and other contraband.  Appellant also had $875 in cash on his
person. 

DISCUSSION

In a single issue, Appellant
contends that the trial court erred by denying his motion to suppress.  He asserts that the arresting officer did not
have reasonable suspicion to make an investigatory detention, his consent to
search was not valid, and the unlawful detention vitiated his consent. 

1.  Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s
ruling.  Id.  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  








To suppress evidence because
of an alleged Fourth Amendment violation, the defendant bears the initial
burden of producing evidence that rebuts the presumption of proper police
conduct.  Ford v. State, 158
S.W.3d 488, 492 (Tex. Crim. App. 2005). 
A defendant satisfies this burden by establishing that a search or seizure
occurred without a warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was reasonable.[3]  Id.

Whether a search is
reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004).  Reasonableness
is measured by examining the totality of the circumstances.  Id. at 63.  It requires a balancing of the public
interest and the individual=s right to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically
defined and well-established@ exceptions to the warrant requirement.  McGee v. State, 105 S.W.3d 609, 615
(Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see Best,
118 S.W.3d at 862.

 








2.  Investigative Detention

Appellant argues that Officer
Jenkins did not have reasonable suspicion to make an investigatory
detention.  The State argues that
Appellant was not subjected to an investigative detention, and alternatively,
that if a detention did occur, it was based on specific, articulable
facts.  The State contends that Appellant
was not subjected to an investigative detention because the car was already
stopped before Officer Jenkins turned on his emergency lights and the fact that
Officer Jenkins turned on his emergency lights does not automatically turn the
consensual encounter into an investigative detention. 

A detention, as opposed to an
arrest, may be justified on less than probable cause if a person is reasonably
suspected of criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  A seizure may occur in either of two ways: 1)
when a person is subjected to physical force, however slight, or 2) when a
person submits to a show of authority.  See
Johnson v. State, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995). 








In Garza v. State, the
State argued that there was no investigative detention of the appellant because
the appellant stopped his car at an auto parts store pursuant to a
predetermined plan to do so, and the appellant did not stop in response to the
patrol car=s flashing
lights.  Garza, 771 S.W.2d 549,
556 (Tex. Crim. App. 1989).  The court
reviewed the testimony of the officers, which indicated that the emergency
lights had been turned on before the appellant had pulled into the auto parts
store.  Id. at 557.  The court determined that, according to the
sequence of events, it could not be maintained that a reasonable person under
the circumstances would have believed he was free to leave.  Id. 

Following Garza, Texas
cases have held that when an officer turns on his traffic lights, the officer
has made a sufficient show of authority to turn a consensual encounter into a
detention or seizure.  See, e.g., Klare
v. State, 76 S.W.3d 68, 73 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d); Hernandez v. State, 963 S.W.2d 921, 924 (Tex. App.CSan Antonio 1998, pet. ref=d).  These cases differ from the
present case in a material respect.  The
cited cases involve traffic stops of moving vehicles, whereas here, Appellant=s vehicle was stopped prior to the time that Officer Jenkins turned on
his emergency lights to indicate to other officers his location.  None of the evidence presented indicates that
Officer Jenkins= use of the
emergency lights produced the stop or detention, or that Appellant yielded to
Officer Jenkins= show of
authority.








Thus, when Officer Jenkins
approached Appellant=s vehicle,
there was no seizure; there was an merely an encounter.  See Hunter v. State, 955 S.W.2d 102, 104
(Tex. Crim. App. 1997) (citing Florida v. Bostick, 501 U.S. 429, 434,
111 S. Ct. 2382, 2386 (1991)).  A person
is free to talk to a police officer or free to refuse to talk to a police
officer during an encounter.  See id.
 

After Officer Jenkins spoke
with Appellant, he asked Appellant to step out of the car.  A detention occurs when a person in a parked
car complies with a police order to roll down the window, open the door, or get
out of the car.  Ebarb v. State,
598 S.W.2d 842, 850 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh=g); Martin v. State, 104 S.W.3d 298, 301 (Tex. App.CEl Paso 2003, no pet.).  Thus,
even if Appellant was not detained when Officer Jenkins turned on his emergency
lights and approached the vehicle, the initial encounter escalated to an
investigatory detention when Officer Jenkins asked Appellant to step out of the
car.  See Martin, 104 S.W.3d at
302.  Accordingly, Officer Jenkins= detention of Appellant must be based on a reasonable suspicion. 

3.  Reasonable Suspicion








In determining the existence
of reasonable suspicion, an objective standard is utilized: whether the facts
available to the officer at the moment of seizure or search warrant a person of
reasonable caution in the belief that the action taken was appropriate.  See Terry, 392 U.S. at 21‑22, 88
S. Ct. at 1880 (1968); Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim.
App. 1997).  An officer conducts a lawful
temporary detention when he has reasonable suspicion to believe that an
individual is violating the law.  Ford,
158 S.W.3d at 492.  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that, when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person is,
has been, or soon will be engaged in criminal activity.  Id. at 492-93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id. at 492.








These Aspecific, articulable facts@ must create a reasonable suspicion that some activity out of the
ordinary is occurring or has occurred, some suggestion to connect the detained
person with the unusual activity, and some indication that the activity is
related to a crime.  Davis, 947
S.W.2d at 244; Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992);
Garza, 771 S.W.2d at 558.  As the Terry
court noted:  Asimple >good faith
on the part of the arresting officer is not enough.=@  Terry, 392 U.S. at 22,
88 S. Ct. at 1880 (quoting Beck v. Ohio, 379 U.S. 89, 97, 85 S. Ct. 223,
229 (1964).  The officer making an
investigative detention or stop must be able to articulate something more than
an inchoate and unparticularized suspicion or hunch.  See id.; Williams v. State, 621
S.W.2d 609, 612 (Tex. Crim. App. 1981). 
The fact that an area is well-known to harbor criminal activity, alone,
is not enough to support a reasonable, particularized suspicion that the person
is committing a crime.  Illinois v.
Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000).  Nervous, evasive behavior is a factor to
consider in determining reasonable suspicion for a Terry stop.  Balentine v. State, 71 S.W.3d 763, 769
(Tex. Crim. App. 2002) (citing Wardlow, 528 U.S. at 124, 120 S. Ct. at
676). 

Appellant cites Ford to
support his claim that Officer Jenkins= testimony in the present case does not provide the specific,
articulable facts necessary to justify this investigatory detention.  See Ford, 158 S.W.3d at 493-94.  In Ford, a police officer stopped the
appellant=s car for
violating a traffic law by following another car too closely.  Id. at 491.  The only testimony that the officer gave
about the circumstances leading to the traffic stop was that the suspect had
committed a traffic violation of A[f]ollowing too close.@  Id.  The court reasoned that this alone cannot
amount to reasonable suspicion because mere opinions are ineffective
substitutes for specific, articulable facts in reasonable‑suspicion
analysis.  Id. at 493.  Although the State supported its argument
with evidence of the officer=s training and experience to qualify the officer=s judgment in assessing whether Ford was driving his vehicle too
closely to another, standing alone, training and experience are insufficient to
establish reasonable suspicion.  Id. at
494.  Thus, the court in Ford found
a complete absence of objective factual support in the record.  Id. at 493‑94.








In the present case, Officer
Jenkins had observed a vehicle parked facing west blocking three parking spots
that face north and south.  Officer
Jenkins testified that he found this activity to be suspicious because the car
was parked in an area where shoppers would not normally park because it would
have been a long walk to the mall, and other parking spots located in closer
proximity to the mall were available.  He
further testified that officers routinely patrol that particular parking area
because a lot of crime happens there, the parking area is covered, and it would
be difficult to see the happenings there. 
Officer Jenkins stated in his report that vehicle burglaries are a
problem at the mall during the Christmas season.

Officer Jenkins testified
that he observed two males with the vehicle. 
The driver=s door was
open and the driver, who was later identified as Appellant, was outside the
vehicle, bent over and doing something inside. Officer Jenkins could not see
what Appellant was doing with his hands. 
He testified that, just before Appellant got in the car to leave, it
appeared that Appellant might have noticed Officer Jenkins observing him.  After leaving that parking lot, Appellant
drove to another retail location, however, neither he nor his passenger exited
the vehicle. 








As discussed above, the
investigative detention did not begin until after  Officer Jenkins asked Appellant to step out
of the car.  Officer Jenkins testified
that he spoke with Appellant before he asked Appellant to step out of the car.
He testified that, before he could even ask Appellant what he was doing at the
mall, Appellant immediately began telling him that he had just purchased a
jacket, and he insisted on showing Officer Jenkins the receipt.  In Officer Jenkins= opinion, Appellant sounded nervous and was talking fast. 

We hold that, based on the
totality of the circumstances, Officer Jenkins was able to point to specific,
articulable facts to establish reasonable suspicion and justify the
investigatory detention of Appellant. 

4.  Consent to Search

Appellant also asserts that
the State failed to show by clear and convincing evidence that his consent to
search was valid.  Under the Fourth and
Fourteenth Amendments, Aa search
conducted without a warrant issued upon probable cause is >per se unreasonable . . . subject only to . . . specifically
established and well‑delineated exceptions.=A  Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) (quoting Katz v. United
States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)); Rayford v. State,
125 S.W.3d 521, 528 (Tex. Crim. App. 2003), cert. denied, 543 U.S.  823 (2004).








A search conducted with the
consent of the suspect is one such exception, so long as the consent is
voluntary.  Schneckloth, 412 U.S.
at 219, 248‑49, 93 S. Ct. at 2043-44, 2059.  The validity of a consent to search is a
question of fact to be determined from all the circumstances.  Ohio v. Robinette, 519 U.S. 33, 40,
117 S. Ct. 417, 421 (1996); Maxwell v. State, 73 S.W.3d 278, 281 (Tex.
Crim. App.), cert. denied, 537 U.S. 1051 (2002).  The federal constitution requires the State
to prove the validity of the consent by a preponderance of the evidence; the
Texas Constitution requires the State to show by clear and convincing evidence
that the consent was valid.  Maxwell,
73 S.W.3d at 281. 

The consent must be shown to
be positive and unequivocal, free from duress or coercion.  Meeks v. State, 692 S.W.2d 504, 509
(Tex. Crim. App. 1985).  Although a
police officer's failure to inform the accused that he can refuse consent is a
factor to consider, the absence of such information does not automatically
render the accused=s consent
involuntary.  Johnson v. State, 68
S.W.3d 644, 653 (Tex. Crim. App. 2002). 
Nor is consent rendered involuntary when the person is under arrest, as
long as the officer=s guns are
not drawn.  Id. 








Here, the trial court entered
a written order denying Appellant=s motion to suppress, but never made specific findings of fact or
conclusions of law. Officer Jenkins= testimony reflects that he gave Appellant the consent to search form
and that Appellant quickly read and signed it. 
Officer Jenkins never told Appellant that he was under arrest or that he
would seek to have a search warrant issued if Appellant did not sign the
form.  There was no evidence to suggest
that Officer Jenkins had his gun drawn or that Appellant was handcuffed when he
gave the consent to search.  Appellant
never testified at the hearing on the motion to suppress, and Appellant never
presented evidence to contradict Officer Jenkins= testimony. 

Viewing the evidence in the
light most favorable to the trial court=s ruling, we hold that the State met its burden of proving by clear
and convincing evidence that Appellant=s consent was valid. 

                                          5.  Attenuation

Appellant=s final contention is that the alleged unlawful detention vitiated his
consent to search, and that the taint was not shown to have been
attenuated.  As discussed above, an
examination of the evidence reveals that his detention was not unlawful and his
consent was freely and voluntarily given.  See Simmons v. State, 504 S.W.2d 465, 471
(Tex. Crim. App.) (holding that defendant=s confessions were not vitiated by his detention when evidence showed
ample reason for the detention and the confession was otherwise shown to be
voluntary), cert. denied, 419 U.S. 829 (1974).  Consequently, Appellant=s contention is without merit.








Because Officer Jenkins had a
reasonable suspicion sufficient to justify his investigatory detention and the
State met its burden of proving that Appellant=s consent was valid, we hold that the trial court did not err in
denying Appellant=s motion to
suppress.  Accordingly, we overrule
Appellant=s sole
issue.

CONCLUSION

Having overruled Appellant=s sole issue, we affirm the judgment of the trial court.

PER CURIAM

 

PANEL
A:  HOLMAN, J.; CAYCE, C.J.; and
LIVINGSTON, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 16, 2006











[1]See Tex. R. App. P. 47.4.





[2]It is
not clear from the record precisely what Appellant was doing outside the car,
because the officer stepped down from the witness stand and was illustrating
his actions.  The record merely reflects
that Aone
of the male occupants was out of the vehicle and was bent over in the vehicle
doing something of this nature.@ 





[3]The
State stipulated that the detention and arrest of Appellant was warrantless.